# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

TECHNOLOGY TRAINING ASSOCIATES, INC. and LARRY E. SCHWANKE, D.C., d/b/a BACK TO BASICS FAMILY CHIROPRACTIC, individually and as representatives of a class of similarly situated persons,

*Plaintiffs-Appellees,*

v.

BUCCANEERS LIMITED PARTNERSHIP,

*Defendant-Appellee,*

v.

CIN-Q AUTOMOBILES, INC. and MEDICAL & CHIROPRACTIC CLINIC, INC.,

*Intervenors-Appellants.*

_____

*On Appeal from the United States District Court*
*for the Middle District of Florida*
*No. 8:16-cv-01622-AEP (Hon. Anthony E. Porcelli)*

_____

## APPELLANTS' BRIEF

Glenn L. Hara
**ANDERSON + WANCA**
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847-368-1500
Email: ghara@andersonwanca.com

Michael C. Addison
FL Bar No. 0145579
**ADDISON & ASSOCIATES, P.A.**
400 N. Tampa St., Suite 1100
Tampa, FL 33602-4714
Telephone: (813) 223-2000
Email: m@mcalaw.net

*Attorneys for Intervenors-Appellants*

## Certificate of Interested Persons and
## Corporate Disclosure Statement

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Intervenors-Appellants, Cin-Q Automobiles Inc. and Medical & Chiropractic Clinic, Inc., provide the following Certificate of Interested Persons and Corporate Disclosure Statement:

**Corporate Disclosure:**

Intervenors-Appellants, Cin-Q Automobiles, Inc. and Medical & Chiropractic Clinic, Inc., state that they have no parent corporations, and no publicly held corporation owns 10% or more of their stock.

**Interested Persons:**

1.  Addison & Associates, P.A. – Counsel for Intervenors-Appellants

2.  Addison, Michael – Counsel for Intervenors-Appellants

3.  Anderson + Wanca – Counsel for Intervenors-Appellants

4.  Blank, Stacy – Counsel for Defendant-Appellee

5.  Bock, Hatch, Lewis & Oppenheim, LLC – Counsel for Plaintiffs-Appellees

6.  Bock Law Firm, LLC – Counsel for Plaintiffs-Appellees

7.  Bock, Phillip A. – Counsel for Plaintiffs-Appellees

8.  Borucke, David – Counsel for Defendant-Appellee

9.     Buccaneers Limited Partnership – Defendant-Appellee

10.    Buccaneers Team LLC – Defendant-Appellee

11.    Cin-Q Automobiles, Inc. – Intervenor-Appellant

12.    Cohen, Daniel – Counsel for Defendant-Appellee

13.    Cohen, David S. – Counsel for Defendant-Appellee

14.    Cole, Scott & Kissane, P.A. – Counsel for Defendant-Appellee

15.    Good, Ross – Counsel for Intervenors-Appellants

16.    Hara, Glenn L. – Counsel for Intervenors-Appellants

17.    Holland & Knight LLP – Counsel for Defendant-Appellee

18.    Kelly, Ryan – Counsel for Intervenors-Appellants

19.    Lally, Kathleen P. – Counsel for Defendant-Appellee

20.    Latham & Watkins LLP – Counsel for Defendant-Appellee

21.    Medical & Chiropractic Clinic, Inc. – Intervenor-Appellant

22.    Mester, Mark S. – Counsel for Defendant-Appellee

23.    Oppenheim, David M.

24.    Piper, Jonathan – Counsel for Plaintiffs-Appellees

25.    Porcelli, Anthony E. – United States Magistrate Judge

26.    Postman, Barry – Counsel for Defendant-Appellee

27.    Schwanke, Larry E., D.C. – Plaintiff-Appellee

28.    Solberg, Wallace – Counsel for Intervenors-Appellants

29.     Sorel, Justin – Counsel for Defendant-Appellee

30.     Varner, Joseph – Counsel for Defendant-Appellee

31.     Technology Training Assocs., Inc. – Plaintiff-Appellee

32.     Wanca, Brian – Counsel for Intervenors-Appellants

## STATEMENT REGARDING ORAL ARGUMENT

Intervenors-Appellants Cin-Q Automobiles, Inc. and Medical & Chiropractic Clinic, Inc. ("*Cin-Q* Plaintiffs") request that the Court hear oral argument in this matter. *Cin-Q* Plaintiffs submit that oral argument may be helpful in light of the lengthy procedural history of the *Cin-Q* Action; the relationship between the *Cin-Q* Action and the *TTA* Action, in which *Cin-Q* Plaintiffs were denied leave to intervene, thus giving rise to this appeal; and developments that will likely be unfolding with respect to the proposed *TTA* settlement subsequent to the filing of Intervenors-Appellants' Brief.

# TABLE OF CONTENTS

**Page(s)**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT .........................................C-1

STATEMENT REGARDING ORAL ARGUMENT....................................i

TABLE OF CONTENTS.............................................................................ii

TABLE OF AUTHORITIES .....................................................................iv

INTRODUCTION........................................................................................1

JURISDICTIONAL STATEMENT................................................................3

ISSUES PRESENTED .................................................................................4

STATEMENT OF THE CASE.......................................................................5

SUMMARY OF ARGUMENT ...................................................................19

ARGUMENT ...........................................................................................20

    I.    The district court erred in denying *Cin-Q* Plaintiffs'
        motion to intervene as of right.................................................20

        A.    The *TTA* Action exists for the purpose of impairing
            and impeding *Cin-Q* Plaintiffs' interest in obtaining
            class certification against BLP ......................................21

        B.    *Cin-Q* Plaintiffs' interests are not adequately
            represented by the *TTA* Plaintiffs or their counsel,
            and the district court erred in refusing to address
            this issue on their motion to intervene ..........................26

    II.    The district court abused its discretion in denying *Cin-Q*
        Plaintiffs' motion for permissive intervention ........................32

# TABLE OF CONTENTS (cont'd.)

**Page(s)**

CONCLUSION ............................................................................. 33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arakaki v. Cayetano*,
    324 F.3d 1078 (9th Cir. 2003) ...........................................28

*Arkin v. Innocutis Holdings, LLC*,
    188 F. Supp. 3d 1304 (M.D. Fla. 2016)..............................7

*Bonner v. City of Prichard, Ala.*,
    661 F.2d 1206 (11th Cir. 1981) .........................................23

*Chiles v. Thornburgh*,
    865 F.3d 1197 (11th Cir. 1989) ...................................26, 32

*Cin-Q Auto., Inc. v. Buccaneers Ltd. P'ship*,
    2014 WL 7224943 (M.D. Fla. Dec. 17, 2014) ...................7

*Cin-Q Auto., Inc. v. Buccaneers Ltd. P'ship*,
    2015 WL 2092810 (M.D. Fla. May 5, 2015)......................7

*Deposit Guaranty Nat'l Bank v. Roper*,
    445 U.S. 326 (1980).......................................................4, 23

*Espenscheid v. DirectSat USA, LLC*,
    688 F.3d 872 (7th Cir. 2012) ............................................22

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) ............................................19

*Ewing Indus. Corp. v. Bob Wines Nursery, Inc.*,
    795 F.3d 1324 (11th Cir. 2015) ...................................14, 30

*Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*,
    983 F.2d 211 (11th Cir. 1993) .....................................20, 26

*Griffin v. Singletary*,
    17 F.3d 356 (11th Cir. 1994) ......................................14, 29

**Page(s)**

**Cases**

*Imhoff Inv., LLC v. Alfoccino, Inc.*,
    792 F.3d 627 (6th Cir. 2015) ..............................................7

*In re Bayshore Ford Truck Sales, Inc.*,
    471 F.3d 1233 (11th Cir. 2006) ........................................28

*In re Domestic Air Transp. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993) .......................................21

*JWD Auto., Inc. v. DJM Advisory Grp. LLC*,
    --- F. Supp. 3d --- , 2016 WL 6835986,
    (M.D. Fla. Nov. 21, 2016) ...............................................7

*LaBauve v. Olin Corp.*,
    231 F.R.D. 632 (S.D. Ala. 2005) ....................................29

*Med. & Chiropractic Clinic, Inc. v. Oppenheim*,
    --- F. Supp. 3d ---, 2017 WL 1382196
    (M.D. Fla. Mar. 23, 2017)...............................................15

*Meek v. Metro. Dade Cty., Fla.*,
    985 F.2d 1471 (11th Cir. 1993) .................................20, 26

*Mims v. Arrow Fin. Servs., LLC*,
    132 S. Ct. 740 (2012).......................................................3

*Prado-Steiman ex rel. Prado v. Bush*,
    221 F.3d 1266 (11th Cir. 2000) .................................18, 33

*Reynolds v. Beneficial Nat. Bank*,
    288 F.3d 277 (7th Cir. 2002) ...........................................15

*Scoma Chiropractic, P.A. v. Dental Equities, LLC*,
    --- F. Supp. 3d ---, 2017 WL 111580,
    (M.D. Fla. Jan. 11, 2017) .................................................7

# TABLE OF AUTHORITIES (cont'd.)

**Page(s)**

## Cases

*Seacoast Sanitation Ltd., Inc. v. Broward Cty., Fla.*,
   275 F. Supp. 2d 1370 (S.D. Fla. 2003) ............................................29

*Stein v. Buccaneers Ltd. P'ship*,
   772 F.3d 698 (11th Cir. 2014) ..........................................................23

*Stone v. First Union Corp.*,
   371 F.3d 1305 (11th Cir. 2004) ......................................4, 18, 20, 26

*Thomas v. Henderson*,
   297 F. Supp. 2d 1311 (S.D. Ala. 2003) ...........................................32

*Trbovich v. United Mine Workers*,
   404 U.S. 528 (1972) ..........................................................................26

*U.S. Parole Comm'n v. Geraghty*,
   445 U.S. 388 (1980)......................................................................4, 22

*United States v. City of Hialeah*,
   899 F. Supp. 603 (S.D. Fla. 1994)
   (11th Cir. 1998) .................................................................................28

*Widjaja v. YUMA Brands, Inc.*,
   2009 WL 3462040 (E.D. Cal. Oct. 22, 2009) ...................................28

*Zeidman v. J. Ray McDermott & Co.*,
   651 F.2d 1030 (5th Cir. 1981) .........................................4, 22–24, 33

## Statutes

28 U.S.C. § 1331 ........................................................................................3

47 U.S.C. § 227(b)(3)..................................................................................1

**Page(s)**

**Rules &  Regulations**

Fed. R. Civ. P. 24(a)............................................................2–3, 32
Fed. R. Civ. P. 24(b)............................................................2–3, 33
Fed. R. Civ. P. 23(f) .............................................................3, 18

47 C.F.R. § 64.1200(f)(10).........................................................6–7


**Other Authorities**

Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1920 (3d ed.)....................28

## INTRODUCTION

This case is a "copycat" of *Cin-Q Auto. Inc. v. Buccaneers Ltd. P'Ship*, No. 13-cv-1592 (M.D. Fla.) (the "*Cin-Q* Action"), filed in 2013 by Intervenors-Appellants Cin-Q Automobiles, Inc. and Medical & Chiropractic Clinic, Inc. ("*Cin-Q* Plaintiffs"). Both cases arise out of a massive junk-faxing campaign undertaken by Buccaneers Limited Partnership ("BLP"), in which BLP inundated businesses and individuals in the Tampa area with over 300,000 unsolicited faxes advertising tickets to Tampa Bay Buccaneers football games, in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227(b)(3).

*Cin-Q* Plaintiffs and their counsel worked for over three years to gather the evidence needed to move for class certification, conducting over a dozen depositions, including *Cin-Q* Plaintiffs' depositions, subpoenaing documents from third parties involved in the fax broadcasting, engaging a computer-forensics expert to analyze the fax-transmission records, and defeating BLP's dispositive motions. (*See* A251–58, *Cin-Q* Doc. 207, *Cin-Q* Pls.' Mot. Class Certification at 3–10).[1] Finally, on March 25, 2016, the district court permitted *Cin-Q* Plaintiffs to file their Motion for Class Certification. (*Id.*)

---

[1] This Brief cites documents filed in the *Cin-Q* Action as "*Cin-Q* Doc. ___," and documents filed in the *TTA* Action as "*TTA* Doc. ___." The Order from which this appeal was taken, *TTA* Doc. 56, cites numerous documents filed in both cases, and the filings in both cases were before the district court.

On June 20, 2016, the deadline for BLP's response to *Cin-Q* Plaintiffs' Motion for Class Certification, this case (the "*TTA* Action") was filed by Technology Training Assocs., Inc. and Larry E. Schwanke, D.C. ("*TTA* Plaintiffs"). Two days later, without *Cin-Q* Plaintiffs' involvement, *TTA* Plaintiffs filed a motion for preliminary approval of a class-action settlement they had negotiated with BLP before the *TTA* Action was even filed. (A525, *TTA* Doc. 18). Because the *TTA* Action was filed six to seven years after the faxes were sent, one of the terms of the settlement agreement is that "BLP waives any affirmative defense regarding the statute of limitations that it may have had to Plaintiffs' claims." (A583, *TTA* Doc. 18-1, *TTA* Settlement Agreement § XV.H).

On June 8, 2016, *Cin-Q* Plaintiffs moved to intervene in the *TTA* Action by right under Fed. R. Civ. P. 24(a) and by permissive intervention under Fed. R. Civ. P. 24(b). (A707, *TTA* Doc. 28, *Cin-Q* Pls.' Mot. Intervene). *Cin-Q* Plaintiffs sought to intervene in order to argue (1) that *TTA* Plaintiffs' class-action claims should be dismissed or stricken for lack of standing as time-barred, and (2) that the *TTA* settlement is an impermissible "reverse auction" with disarmed plaintiffs who could not have maintained a viable class action against BLP absent its consent, indicating procedural unfairness. (A710).

On March 31, 2017, the district court denied *Cin-Q* Plaintiffs' motion to intervene in the *TTA* Action, granted *TTA* Plaintiffs' motion for preliminary

approval of the *TTA* settlement, and denied as "moot" *Cin-Q* Plaintiffs' Motion for Class Certification. (A965, *TTA* Doc. 56, Order). *Cin-Q* Plaintiffs timely petitioned this Court for interlocutory review of the denial of class certification under Fed. R. Civ. P. 23(f), which remains pending in Appeal No. 17-90010.

In this appeal, No. 17-11710, *Cin-Q* Plaintiffs appeal solely from the denial of their motion to intervene, and do not attack the terms of the *TTA* settlement. Although *Cin-Q* Plaintiffs maintain the *TTA* settlement is not fair, adequate, or reasonable, this appeal is limited to reviewing the district court's denial of intervention as of right under a de novo standard, and reviewing the denial of permissive intervention for abuse of discretion.

## JURISDICTIONAL STATEMENT

 The United States District Court for the Middle District of Florida had subject-matter jurisdiction of this action pursuant to 28 U.S.C. § 1331. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 752–53 (2012) (holding federal and state courts share concurrent jurisdiction over TCPA claims).

On March 31, 2017, the district court denied *Cin-Q* Plaintiffs' motion to intervene as of right under Fed. R. Civ. P. 24(a) and for permissive intervention under Fed. R. Civ. P. 24(b). (A965, *TTA* Doc. 56, Order). *Cin-Q* Plaintiffs timely filed a notice of appeal on April 14, 2017. (A1019, *TTA* Doc. 58, Notice of Appeal).

This Court has provisional jurisdiction under the "anomalous rule" to review both the denial of intervention as of right and the denial of permissive intervention. *Stone v. First Union Corp.*, 371 F.3d 1305, 1308 (11th Cir. 2004). If the district court erred in denying intervention as of right, then this Court has jurisdiction to correct the error. *Id.* If the district court did not err, then appellate jurisdiction "evaporates." *Id.* Similarly, if the district court abused its discretion in denying permissive intervention, this Court has jurisdiction to correct the abuse. *Id.*

## ISSUES PRESENTED

1.     Whether the district court erred in denying *Cin-Q* Plaintiffs' motion to intervene as of right, where it assumed that *Cin-Q* Plaintiffs' only interest is the possibility of an "incentive award," which it held they could seek from the *TTA* settlement, but where *Cin-Q* Plaintiffs vigorously litigated their class claims for years, giving them a stand-alone interest in serving as class representatives, *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 402–04 (1980), and in obtaining their litigation costs, including attorney fees, from a class recovery, *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 336 (1980). *See Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir. 1981) (applying *Geraghty* and *Roper*).

2.     Whether the district court abused its discretion in denying *Cin-Q* Plaintiffs' motion for permissive intervention where it acknowledged that the

elements for such intervention were met, but again erroneously assumed *Cin-Q* Plaintiffs' interests are limited to obtaining an incentive award.

## STATEMENT OF THE CASE

In early 2009, BLP decided to "generate some ticket sales" by sending fax advertisements in and around West Central Florida. (*See* A251, *Cin-Q* Doc. 207, *Cin-Q* Pls.' Mot. Class Certification at 3). BLP had a list of the team's "existing contacts," but it wanted to drum up "new business" by targeting prospective customers. (*Id.*) Matt Kaiser, BLP's Director of New Business Development, conducted internet research on fax broadcasters and settled on a company called FaxQom. (*Id.*)

Over the next year, BLP paid FaxQom over $30,000 to send one- and two-page fax advertisements promoting individual and/or group tickets to Buccaneers games to business fax numbers from Gainesville to Sarasota. (A252–55, *Cin-Q* Doc. 207, *Cin-Q* Pls.' Mot. Class Certification at 4–7). BLP created the advertisements, controlled the area codes to which they were sent, controlled the time of day they were sent, and monitored the faxing in real time, having directed FaxQom to put BLP's fax number in California on the distribution list. (*Id.*)

Plaintiff Cin-Q Automobiles filed the *Cin-Q* Action on June 15, 2013, with a Second Amended Complaint ("SAC"), adding Medical & Chiropractic on January 3, 2014. (A13, *Cin-Q* Doc. 70, SAC). Over the following three years, the parties

conducted over a dozen depositions in Florida, Philadelphia, Colorado, Texas, and Canada.[2] The parties hired expert witnesses and disclosed their reports and rebuttal reports. The district court decided numerous discovery disputes. (*E.g.*, *Cin-Q* Doc. 121, Order, Apr. 8, 2014 (ruling on five discovery motions)). The district court also ruled on numerous substantive motions, including the following:

- BLP's motion to dismiss (*Cin-Q* Doc. 17), which the district court denied on October 23, 2013, holding Cin-Q adequately alleged BLP is the "sender" under 47 C.F.R. § 64.1200(f)(10) because it "authorized FaxQom to send the facsimile advertisements on its behalf" and BLP's "goods or services were advertised in the facsimile at issue." (*Cin-Q* Doc. 41 at 4, 5–6).

- Cin-Q's motion to file the SAC, which BLP vigorously opposed and the district court granted on January 3, 2014. (*Cin-Q* Doc. 68 at 2).

- The parties' cross-motions for summary judgment (*Cin-Q* Docs. 129 & 138)—and associated responses (*Cin-Q* Docs. 143 & 144), and supplemental

---

[2] The following depositions were taken: (i) Florida – Karolyn Sheekey (2/17/14), Brian Sheekey (12/26/13), Craig Cinque (Cin-Q Automobile's principal) (2/14/14), Michele Zakrzewski (Medical & Chiropractic's principal) (2/12/14), Ben Milson (5/2/14), Manuel Alvare (5/29/14), Brian Ford (5/29/14), and Gregory Williams (10/13/15); (ii) Philadelphia – Ian Jenkins (6/8/15), David Canfield (12/10/15), and Stephen K. Schurer (2/18/14, no show); (iii) Canada – Jonathon Nelson (1/16/14) and Stefani Pelowich (3/9/15); Colorado – Darren Morgan (3/24/14), and Jason Layton (3/24/14); (iv) California – Matt Kaiser (3/25/14); and (v) Texas – Michael Clement (3/10/14).

briefing (*Cin-Q* Docs. 146–48 & 155–60)—both of which the district court denied in a 22-page Order & Memorandum, finding a genuine issue of material fact over whether BLP was the "sender" of the faxes. *Cin-Q Auto., Inc. v. Buccaneers Ltd. P'ship*, 2014 WL 7224943 (M.D. Fla. Dec. 17, 2014).[3]

• BLP's motion to proceed to trial on Plaintiff's individual claims before deciding class certification (*Cin-Q* Doc. 169), and Plaintiffs' motion to reconsider the denial of summary judgment or certify questions for review to this Court (*Cin-Q* Doc. 170), both of which the district court denied. *Cin-Q Auto., Inc. v. Buccaneers Ltd. P'ship*, 2015 WL 2092810 (M.D. Fla. May 5, 2015).

In addition, for much of 2015 and into 2016, *Cin-Q* Plaintiffs and BLP attempted to negotiate a class settlement, including full-day mediation sessions on February 13, 2015, in Miami, and August 31, 2015, in Chicago. *Cin-Q* Plaintiffs were represented at those mediations by David Oppenheim, then an attorney at Anderson + Wanca. (A971, *TTA* Doc. 56, Order at 7). Although neither of the mediation sessions resulted in a settlement, negotiations continued by telephone

---

[3] This conclusion was erroneous because a defendant whose "goods or services are advertised" in a fax sent after August 1, 2006, is the "sender" under the FCC regulation defining that term, 47 C.F.R. § 64.1200(f)(10). *See Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 636 (6th Cir. 2015); *Arkin v. Innocutis Holdings, LLC*, 188 F. Supp. 3d 1304, 1307 (M.D. Fla. 2016); *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, --- F. Supp. 3d ---, 2017 WL 111580, at *2–3 (M.D. Fla. Jan. 11, 2017); *JWD Auto., Inc. v. DJM Advisory Grp. LLC*, --- F. Supp. 3d --- , 2016 WL 6835986, at *4 (M.D. Fla. Nov. 21, 2016).

and email under supervision of the mediator, Hon. Wayne R. Andersen (Ret.) at JAMS.

On March 25, 2016, *Cin-Q* Plaintiffs timely filed their Motion for Class Certification in accordance with the district court's scheduling orders. The district court granted BLP's request for six weeks to file a response, by May 6, 2016. (*Cin-Q* Doc. 202, Order).

On April 8, 2016, Mr. Oppenheim left Anderson + Wanca to form Bock, Hatch, Lewis & Oppenheim ("BHLO"). (A972, *TTA* Doc. 56, Order at 8). On April 20, 2016, BLP requested an additional 45 days to file its response to the motion for class certification, giving BLP a total of three months to respond. The district court granted BLP its requested extension to June 20, 2016. (*Cin-Q* Doc. 217, Order).

On April 29, 2016, Oppenheim wrote in an email to the principal of his new firm, Phil Bock, that the *Cin-Q* mediations were unsuccessful because Brian Wanca, principal of Anderson + Wanca, "wants to set a record above the Capitol One $75 million settlement." (A288, *TTA* Doc. 54-3, BLF000009, Email from Oppenheim to Bock, Apr. 29, 2016). Bock responded, "[a]ll of a sudden, I'm a Tampa Bay Buccaneers fan!" (A287, BLF000008, Email from Bock to Oppenheim, Apr. 29, 2016).

Bock stated to Oppenheim that "you could come forward with another class member and settle that case over the objections of your former employer and also over the objections of your former individual client." (A286, BLF000007, Email from Bock to Oppenheim, Apr. 29, 2016). Bock advised Oppenheim that "your penultimate [*sic*] duty is to the class, not to the named plaintiff and certainly not to some greedy [expletive] who is not a class member and is just sitting in an office in [R]olling Meadows." (*Id.*) "Fun stuff," Bock stated, adding that "[t]o make it more Machiavellian" it would "be funny to put a bug in [*Cin-Q* counsel Michael Addison's] ear, that somebody else is secretly negotiating with the Buccaneers in an uncertified class action." (*Id.*)

Oppenheim responded that "[t]hey actually brought in Mark Mester with Latham & Watkins after having a jamoke named Barry Postman for most of the case." (*Id.*) Bock stated, "Mesters is a settler." (*Id.*) Oppenheim responded, "[t]hat was Andersen's read" as well, referring to Judge Andersen, the mediator overseeing the confidential settlement negotiations. (*Id.*)

Bock then forwarded his email conversation with Oppenheim to the other attorneys in his firm, adding, "Hmm. Brian [Wanca] holding out for a record settlement in an uncertified case (not that the latter part is so relevant). We could find a plaintiff and approach the defendant about settling? Lol." (A290, BLF000015, Email from Bock to Lewis, Smith, and Cohen, Apr. 29, 2016).

On May 2, 2016, at *Cin-Q* Plaintiffs' request, Judge Andersen declared an impasse in the mediation negotiations. (A295, *Cin-Q* Doc. 218, Mediator's Notice of Impasse).

On May 6, 2016, Mr. Oppenheim's new firm, BHLO, filed a "copycat" action in Florida state court on behalf of Technology Training Associates, styled *Technology Training Assocs., Inc. v. Buccaneers Ltd. P'Ship*, No. 16-CA-004333, Circuit Court of the 13th Judicial Circuit in Hillsborough County, Florida ("*Technology Training I*"), asserting substantively identical allegations and claims to the first-filed *Cin-Q* Action, on behalf of the same class as the *Cin-Q* Action, against the same defendant, and involving the same fax advertisements.

On May 11, 2016, *Cin-Q* counsel learned of *Technology Training I* when a case manager at JAMS copied *Cin-Q* counsel, Michael Addison, on an email scheduling a mediation with BLP's counsel and *TTA* counsel (thus putting "a bug in his ear"). (A302–04, *Cin-Q* Doc. 223, *Cin-Q*, Pls.' Mot. Enjoin at 5–7). The next morning, BLP filed a Notice of Pendency of Related Action in the district court pursuant to Local Rule 1.04(d) disclosing that *Technology Training I* had been filed six days earlier. (*Cin-Q* Doc. 222).

On May 13, 2016, *Cin-Q* Plaintiffs filed a motion to intervene in the state court *Technology Training I* case, seeking leave to file a motion to (1) stay *Technology Training I* pending resolution of the first-filed *Cin-Q* Action, or (2)

strike the class allegations as barred by the statute of limitations and disqualify BHLO from the representation due to its conflict with Oppenheim's former clients, the *Cin-Q* Plaintiffs. (A967, *TTA* Doc. 56, Order at 3). The state-court judge set the motion to intervene for hearing in chambers on May 18, 2016. (*Id.*)

On May 16, 2016, *Cin-Q* Plaintiffs filed a motion in the *Cin-Q* Action, asking the district court to enjoin BLP and BHLO from proceeding with the state-court *Technology Training I* action. (*Id.*) On the morning of May 18, 2016, prior to the hearing on *Cin-Q* Plaintiffs' motion to intervene in the state court, BHLO voluntarily dismissed the state-court action, arguing that the state court was thereby divested of jurisdiction. (*Id.*)

On May 19, 2016, BLP and counsel for *TTA* Plaintiffs, who no longer had a case on file against BLP, spent the day mediating a class settlement before mediator Peter Grilli. (A550, *TTA* Doc. 18-1, *TTA* Settlement Agreement §§ I.E & F). That mediation was not disclosed to *Cin-Q* Plaintiffs or the district court.

On May 25, 2016, the district court held a telephonic hearing on Plaintiffs' motion to enjoin. (A323, *Cin-Q* Doc. 232, Hr'g Tr., May, 25, 2016, at 5). Because BHLO had voluntarily dismissed the state-court case, the district court denied the motion to enjoin as moot. (A328, Hr'g Tr. at 10). The court asked whether BLP was "on track" to respond to Plaintiffs' motion for class certification on June 20, 2016. (A329, Hr'g Tr. at 11). BLP's counsel represented that BLP was "largely on

track" to respond, and the Court ordered that if BLP required any further extensions, it should "contact my chambers and we'll conduct a quick telephonic hearing to hear what the issue is and I'll consider whether to extend the June 20th deadline." (A333, Hr'g Tr. at 15).

The district court also ordered *Cin-Q* Plaintiffs and BLP to make another attempt at mediating the case, stating, "I am going to order the parties to mediate again one more time" and that "[i]n light of these recent events, there ought to be some reconsideration of the positions of the parties." (A328–29, Hr'g Tr. at 10–11). The court ordered that "the mediation is to occur before the response of the class certification" on June 20, unless "the mediator cannot accommodate prior to June 20th. But outside of that, I want it to occur prior to the 20th." (A333–34, Hr'g Tr. at 15–16). BLP did not disclose in the May 25 hearing that it had already spent one day mediating a settlement with *TTA* Plaintiffs before Grilli on May 19 or that it had already scheduled another mediation session with Grilli to occur prior to the June 20 deadline. (*Id.*)

Following the May 25 hearing, *Cin-Q* Plaintiffs and BLP agreed to mediate before Hon. Edward A. Bobrick (Ret.) at JAMS in Chicago on June 17, 2016. (A621, *Cin-Q* Doc. 240, *Cin-Q* Pls.' Opp. Mot. Stay at 6). Plaintiff Medical & Chiropractic's representative, Michelle Zakrzewski, and Plaintiffs' counsel Michael Addison, travelled to the mediation from Florida on June 16. (*Id.*)

On the evening of June 16, 2016, BLP's counsel notified *Cin-Q* counsel by email that "late this afternoon," it reached a settlement with an unnamed "class representative." (*Id.*) BLP's counsel tried to cancel the mediation, and *Cin-Q* Plaintiffs' counsel stated their intention to attend the mediation and negotiate in good faith as ordered by the district court. (*Id.*) On June 17, 2016, *Cin-Q* Plaintiffs attended the mediation; BLP's counsel appeared but maintained there "was nothing left to mediate *vis-à-vis* the class claim." (A411, *Cin-Q* Doc. 237, BLP Mot. Stay at 3, n.1).

On June 20, 2016, the day BLP's response to *Cin-Q* Plaintiffs' motion for class certification was due, BHLO filed the *TTA* Action in the Middle District of Florida, styled *Technology Training Assocs. v. Buccaneers Ltd. P'Ship*, No. 8:16-CV-01622-MSS-AEP (M.D. Fla). BLP did not file its response to *Cin-Q* Plaintiffs' motion for class certification, nor did BLP "contact chambers" to "conduct a quick telephonic hearing" so the Court could "consider whether to extend the June 20th deadline," as the district court ordered in the May 25 hearing. Instead, BLP filed a motion to stay the *Cin-Q* Action or, in the alternative, for an extension of time to respond to the motion for class certification. (A407, *Cin-Q* Doc. 237, BLP Mot. Stay). The same day, *Cin-Q* Plaintiffs moved to consolidate the *TTA* Action with the first-filed *Cin-Q* Action and appoint *Cin-Q* Plaintiffs' counsel as interim class

counsel. (A344, *TTA* Doc. 8, *Cin-Q* Pls.' Mot. Transfer, Consolidate & Appoint Interim Counsel).

On June 22, 2016, *TTA* Plaintiffs filed a motion for preliminary approval, attaching their class settlement agreement with BLP, which is dated June 16, 2016. (A526, *TTA* Doc. 18, *TTA* Pls.' Mot. Preliminary Approval). The proposed *TTA* settlement provides that (1) BLP "waives" the statute of limitations against *TTA* Plaintiffs; (2) BLP agrees to pay BHLO $4.875 million in attorney fees; (3) BLP will pay claiming class members $350 for the first fax they received, declining to $100, $75, and $20 for subsequent faxes, up to a maximum of $565 per claimant, provided that claimants swear, under penalty of perjury and threat of "audit" by BLP, as to the number of BLP fax advertisements they received in 2009–2010; and (4) BLP will pay no more than $19.5 million in total out-of-pocket, for both attorney fees and class claims, with all unclaimed funds remaining with BLP. (A559–61, A583, A592–93, *TTA* Doc. 18-1, *TTA* Settlement Agreement §§ IV.B, V.D, VI.A, XV.H, and Proof of Claim Form).

On June 24, 2016, *Cin-Q* Plaintiffs filed their response to BLP's motion to stay the *Cin-Q* Action, arguing that a stay would be futile because (1) the *TTA* Plaintiffs would not be able to achieve class certification because they lacked standing to assert their time-barred class claims under *Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir. 1994), and *Ewing Indus. Corp. v. Bob Wines Nursery, Inc.*, 795

F.3d 1324, 1325 (11th Cir. 2015), and BLP could not revive those claims by "waiving" this jurisdictional issue; and (2) even if a class could be certified, the *TTA* settlement would never be approved because it was the product of a "reverse auction," in which the defendant picks "the most ineffectual" plaintiffs—here, plaintiffs with time-barred class claims—with whom to negotiate "in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant," *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 282 (7th Cir. 2002). (A622–26, *Cin-Q* Doc. 240, *Cin-Q* Pls.' Opp. Mot. Stay at 7–11).

On June 27, 2016, the district court granted BLP's motion to stay the *Cin-Q* Action and gave *Cin-Q* Plaintiffs leave to file a brief addressing "when the Court should conduct an inquiry into the allegations of a 'reverse auction.'" (A655, *Cin-Q* Doc. 243, Order).

On July 8, 2016, *Cin-Q* Plaintiffs moved to intervene in the *TTA* action, arguing that their interests could be impaired by this "reverse-auction" settlement, and that their interests are not adequately represented by BHLO and Oppenheim, whom Medical & Chiropractic had by then sued for breach of fiduciary duty and aiding and abetting a breach of fiduciary duty.[4] (A708, *TTA* Doc. 28, *Cin-Q* Pls.'

---

[4] On March 23, 2017, the district court (Honeywell, J.) denied BHLO and Oppenheim's motion to dismiss the fiduciary-duty lawsuit. *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, --- F. Supp. 3d ---, 2017 WL 1382196 (M.D. Fla. Mar. 23, 2017).

Mot. Intervene). *Cin-Q* Plaintiffs sought to intervene in order to (1) file the "reverse-auction" brief pursuant to the district court's order; (2) move to strike *TTA* Plaintiffs' time-barred class claims for lack of standing; and (3) "if necessary, to oppose the motion for preliminary or final approval." (A710, *id.* ¶ 5).

On August 11, 2016, the district court held a joint status conference in the *Cin-Q* Action and the *TTA* Action, in which it stated that prior to ruling on the pending motions, the court would "make a determination after a fact-finding whether there is any conflict of interest given the nature of their relationship with Mr. Oppenheim and the former client." (A861, *TTA* Doc. 42, Hr'g Tr., Aug. 11, 2016, at 6). The district court ruled it would not allow *Cin-Q* Plaintiffs to intervene in order to participate in the hearing "because this is I believe the court's function and responsibility to make this determination initially." (A862, Hr'g Tr. at 7).

On October 20, 2016, the district court held its evidentiary hearing, at which Bock and Oppenheim testified. (A902, *TTA* Doc. 63, Hr'g Tr., Oct. 20, 2016). Counsel for *Cin-Q* Plaintiffs were permitted to attend, but "were not permitted to participate" in the hearing. (A974, *TTA* Doc. 56, Order at 10).

At the start of the hearing, counsel for *TTA* Plaintiffs tendered to the district court the string of emails from April 29, 2016, in which Oppenheim told Bock that *Cin-Q* counsel was holding out for a larger settlement than BLP would agree to pay, and that the mediator's "take" was that BLP's new counsel was "a settler,"

which Bock forwarded to the rest of the attorneys in his firm asking if they should "find a plaintiff and approach the defendant about settling? Lol." (A909, *TTA* Doc. 63, Hr'g Tr., Oct. 20, 2016, at 8).

The district court first called Bock to the witness stand, asking him what was the "the 'triggering event' as to when your firm decided to pursue a litigation." (A910, Hr'g Tr. at 9). Bock testified that he had always wanted to file a case against BLP, but he did not have a plaintiff or the fax-transmission records showing the target fax numbers. (A913, Hr'g Tr. at 12). Bock testified that he obtained the list of fax numbers from the expert report *Cin-Q* Plaintiffs filed in support of their motion for class certification, cross-checked those fax numbers against numbers he obtained from potential plaintiffs in Florida who had filed claims in prior class settlements (but were not his "clients"), and then contacted those potential plaintiffs and found interested plaintiffs in Technology Training Associates and Mr. Schwanke. (A916–17, Hr'g Tr. at 15–16).

Regarding the settlement negotiations with BLP, Bock testified that it took "a couple different mediation sessions" to determine "exactly how much money we can get" from BLP. (A942, Hr'g Tr. at 41:18–22). Bock testified that when negotiations with BLP reached an impasse, one of his associates would send "some emails" to BLP's counsel stating, "That's it. Forget it. Good luck with the other guys. We're out." (*Id.*)

On March 31, 2017, the district court entered an Order granting BLP and *TTA* Plaintiffs all the relief they sought, and ruling that "all of the relief requested by *Cin-Q* Plaintiffs is denied." (A966, *TTA* Doc. 56, Order at 2). Specifically, the court (1) denied *Cin-Q* Plaintiffs' motion to intervene, (2) denied *Cin-Q* Plaintiffs' motion to consolidate and appoint interim class counsel, and (3) granted preliminary approval of the *TTA* settlement. (A1006–07, *TTA* Doc. 56, Order at 42–43). The court ordered that class notice of the *TTA* settlement be disseminated by May 30, 2017. (A1008, *TTA* Doc. 56, Order at 44).

On April 14, 2017, *Cin-Q* Plaintiffs timely filed this appeal from the denial of their motion to intervene. (A1019, *TTA* Doc. 58, Notice of Appeal). The same day, *Cin-Q* Plaintiffs filed a petition seeking review of the district court's denial of their motion for class certification under Fed. R. Civ. P. 23(f) in Appeal No. 17-90010, which requested that the Court grant the petition and consolidate the appeal with this appeal from the denial of intervention. BLP responded to the petition on April 27, 2017, and it remains pending.

The district court's denial of intervention as of right is reviewed de novo. *Stone v. First Union Corp.*, 371 F.3d 1305, 1308 (11th Cir. 2004). The district court's denial of permissive intervention is reviewed for abuse of discretion. *Id.* A district court abuses its discretion if it applies "an incorrect legal standard." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1275, n.9 (11th Cir. 2000).

18

## SUMMARY OF ARGUMENT

The *TTA* settlement that the district court preliminarily approved in this case is every bit as "scandalous"—and is in some ways even worse—than the settlement rejected in the Seventh Circuit's landmark decision in *Eubank v. Pella Corp.*, 753 F.3d 718, 721 (7th Cir. 2014) (Posner, J.).[5] But this is not an appeal from a final approval order, and this Court need not consider whether the *TTA* settlement is appropriate at this time. The Court may *never* need to decide the propriety of the *TTA* settlement if it reverses the district court's denial of intervention in this appeal, allowing *Cin-Q* Plaintiffs to intervene to protect their interests as the true representatives of the class.

Thus, in this appeal, the Court should issue two rulings. First, the Court should hold that the district court erred in denying *Cin-Q* Plaintiffs' motion to intervene as of right. Second, the Court should hold that the district court abused its discretion in denying *Cin-Q* Plaintiffs' motion for permissive intervention. If on remand the district court nevertheless grants final approval to the *TTA* settlement, this Court can decide whether the settlement is fair, reasonable, and adequate in an appeal from the final judgment.

---

[5] Counsel for *Cin-Q* Plaintiffs, Anderson + Wanca, were counsel for the objectors to the *Pella* settlement in the Seventh Circuit.

## ARGUMENT

**I.     The district court erred in denying *Cin-Q* Plaintiffs' motion to intervene as of right.**

A district court must allow a party to intervene under Rule 24(a) where "(1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit." *Stone*, 371 F.3d at 1308–09. "Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action." *Meek v. Metro. Dade Cty., Fla.*, 985 F.2d 1471, 1478 (11th Cir. 1993) (quoting *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993)).

In this case, the district court acknowledged that *Cin-Q* Plaintiffs satisfied the first two factors (a timely motion and an interest in the case). (A1005, *TTA* Doc. 56, Order at 41). But the district court denied intervention on the third and fourth elements, holding that "*Cin-Q* Plaintiffs cannot argue that, as a practical matter, their ability to protect their interests are impaired or impeded" because like any "absent" class member, they can object to the settlement at final approval or opt out of the class, and that whether *Cin-Q* Plaintiffs' interests are adequately

represented should be decided in "objections in the normal course of these proceedings" at final approval of the *TTA* settlement. (*Id.*) Both rulings are erroneous, and this Court should reverse.

### A. The *TTA* Action exists for the purpose of impairing and impeding *Cin-Q* Plaintiffs' interest in obtaining class certification against BLP.

*Cin-Q* Plaintiffs argued in the district court that their interests in acting as class representatives and recovering their costs of litigation were in jeopardy in the *TTA* Action. (A721–22, *TTA* Doc. 28, *Cin-Q* Pls.' Mot. Intervene at 14–15). Notably, this is *not* a case where an "absent" class member receives notice of a proposed settlement and then seeks to object to the terms, a circumstance where intervention is not necessary. *See, e.g.*, *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 334 (N.D. Ga. 1993). Rather, this is a highly unusual case where *Cin-Q* Plaintiffs were on the verge of obtaining the class-certification ruling that they had pursued for years, and BLP responded by settling the case with two "disarmed" plaintiffs who did not even have a case on file and whose class claims were time-barred (which is why BLP had to attempt to revive those claims by purporting to "waive" the statute of limitations in the settlement agreement). The

*TTA* Action exists solely as a vehicle to obtain judicial approval of this scheme and preclude *Cin-Q* Plaintiffs from obtaining class certification.

No matter, the district court held, because *TTA* Plaintiffs represented that "they will not oppose an incentive award in favor of *Cin-Q* Plaintiffs," and "BLP recognizes that *Cin-Q* Plaintiffs may seek an incentive award from the Settlement Fund." (A1005, *TTA* Doc. 56, Order at 41). That does not solve the problem. Although *Cin-Q* Plaintiffs do have an interest in obtaining an incentive award for their service to the class, *see Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 874–76 (7th Cir. 2012), that is only one of their interests.

*Cin-Q* Plaintiffs also have a concrete personal interest in prevailing on their pending motion for class certification and acting as class representatives, as they have sought to do for nearly four years now. In *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 402–04 (1980), the Supreme Court held that a proposed class representative has "a 'personal stake' in obtaining class certification" in the nature of a private attorney general, and that this stake alone satisfies Article III standing requirements for purposes of appealing a denial of class certification, even after the named plaintiff's individual claims become moot.

In *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1043–44 (5th Cir. 1981), this Court applied *Geraghty* to hold that the plaintiffs had standinclass

certification after their individual claims had become moot[6] "for the prosecution *both* of this appeal *and of their pending motion for certification in the district court*." (Emphasis added).[7] Even though the plaintiffs no longer had live individual claims, the Court held that, like the named plaintiff in *Geraghty*, the plaintiffs "vigorously advocated their right to class certification, and have done so in a concrete factual setting capable of judicial resolution," and therefore had a concrete interest in appealing the denial of class certification *and* in seeking class certification in the district court. *Id.* Like the plaintiffs in *Geraghty* and *Zeidman*, *Cin-Q* Plaintiffs have "vigorously advocated their right to class certification" in a concrete factual setting for nearly four years now, and their interest in obtaining class certification and acting as class representatives against BLP, standing alone, entitles them to intervene in the *TTA* action to protect that interest.

*Cin-Q* Plaintiffs also have a concrete personal interest in "shift[ing] part of the costs of litigation," including their attorney fees, to the rest of the class. *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 336 (1980). In *Roper*, the Supreme

---

[6] As this Court noted in another class action against BLP involving a "pick-off" attempt, the Fifth Circuit in *Zeidman* "assumed without discussion that the defendant's tender mooted the named plaintiffs' individual claims." *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 704 (11th Cir. 2014).

[7] "As a Fifth Circuit decision issued before October 1, 1981, [*Zeidman*] is binding precedent in the Eleventh Circuit." *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 704 (11th Cir. 2014) (citing *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1207 (11th Cir. 1981)).

Court held that this interest, standing alone, was enough to give the plaintiffs standing to appeal the denial of class certification *and* to pursue class certification in the district court, even after the defendant deposited all the money the plaintiffs could recover with the district court and the district court entered individual judgments for the named plaintiffs. *Id.*

In *Zeidman*, the Court followed *Roper* and held that, like the plaintiffs in that case, the plaintiffs asserted an interest in "'shifting' the litigation costs to other class members," and that "[s]uch an assertion was considered adequate to confer standing in *Roper*, and we perceive no reason why it would not also be adequate here." *Zeidman*, 651 F.2d at 1043, n.10. Like the plaintiffs in *Roper* and *Zeidman*, *Cin-Q* Plaintiffs have asserted their interest in obtaining their costs of litigation from a class recovery against BLP, and that interest, standing on its own, is substantial enough to allow them to intervene in the *TTA* action to protect it.

The district court in this case ignored these interests and adopted the fiction that *Cin-Q* Plaintiffs put years of effort into their class case against BLP based solely on the prospect of an incentive award. Not so.

The president of Cin-Q Automobiles, Craig Cinque, sat for a 6.5-hour deposition in the *Cin-Q* Action, in which he testified that the reason he decided to pursue this class action is that small businesses like his have to comply with the law and a big business like BLP should "be on the same level playing field as

24

everybody else." (A215, *Cin-Q* Doc. 207-12, Cinque Dep. at 217). Cinque testified he understands this is a class action, "where it's not feasible . . . to name every single plaintiff," and that he and "[e]verybody else that got a fax" from BLP have "the same shared interest," and answered "no" to defense counsel's question, "[i]f you could get money but they don't get money, will you settle the case?" (A176, A178–79, Cinque Dep. at 151, 160–61). Cinque was neither asked nor testified that he was pursuing this case in order to obtain an incentive award. (*Id.*)

The representative of Medical & Chiropractic Clinic, Inc., Michelle Zakrzewski, also was neither asked nor testified that she was pursuing her class action against BLP to obtain an incentive award. BLP's counsel asked her "if you were offered to be made whole for whatever your losses are to the extent there are any, would you be willing to walk away?," and Zakrzewski answered "I'd have to think about all the other people that might be involved." (A110, *Cin-Q* Doc. 207-14, Zakrzewski Dep. at 192). When BLP's counsel threatened Ms. Zakrzewski that BLP would seek its "fees and costs if you lose" and that the amount of those fees and costs could cause "the risk of your business," Zakrzewski stated, "I started this, so I have to stand behind it." (A112–13, Zakrzewski Dep. at 200–01).

The *Cin-Q* Plaintiffs are not ordinary "absent" class members, who receive a class notice and then lodge an objection to a proposed settlement, and their interests in this case are not limited to obtaining an incentive award. They

vigorously litigated the class case against BLP for over three years, and the only reason the case was poised to settle in the first place was because of their efforts and the efforts of their counsel over the course of years of hard-fought litigation. *Cin-Q* Plaintiffs have a concrete interest acting as class representatives as the true representatives of the class and recovering their litigation costs from a classwide recovery. The district court erred in barring them from intervening in the *TTA* Action to protect those interests, and this Court should reverse.

### B. *Cin-Q* Plaintiffs' interests are not adequately represented by the *TTA* Plaintiffs or their counsel, and the district court erred in refusing to address this issue on their motion to intervene.

A proposed intervenor need only show "that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Meek v. Metro. Dade Cty., Fla.*, 985 F.2d 1471, 1478 (11th Cir. 1993) (reversing denial of intervention) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). Thus, a proposed intervenor "should be allowed to intervene unless it is clear that [the existing parties] will provide adequate representation." *Chiles v. Thornburgh,* 865 F.3d 1197, 1214–15 (11th Cir. 1989) (granting intervention where it was possible other intervenors would "emphasize" different arguments); *Stone v. First Union Corp.*, 371 F.3d 1305 (11th Cir. 2004) (reversing denial of intervention on same basis); *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993) (reversing

denial of intervention and holding that "any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors").

In this case, the district court did not decide whether *Cin-Q* Plaintiffs' interests "may be" inadequately represented by *TTA* Plaintiffs and their counsel (whom Medical & Chiropractic Clinic is currently suing for breach of fiduciary duty). (A1005, *TTA* Doc. 56, Order at 41). Instead, it deferred ruling on that issue, holding that *Cin-Q* Plaintiffs "may assert their objections in the normal course of these proceedings, as anticipated by Rule 23." (*Id.*) The district court cited no authority allowing it to deny *Cin-Q* Plaintiffs' motion to intervene as of right without deciding this issue, and *Cin-Q* Plaintiffs were entitled to a ruling on the merits of their motion. This Court should reverse on this basis alone.

In addition, the district court had all the information it needed to rule on this question, and the record is so clear that *TTA* Plaintiffs and their counsel at the very least "may be" inadequate to represent *Cin-Q* Plaintiffs' interests that this Court should decide the issue without remanding. Courts generally consider three factors in determining whether a proposed intervenor's interests are adequately represented: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that

other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). Each of these factors required allowing *Cin-Q* Plaintiffs to intervene.

First, neither *TTA* Plaintiffs nor BLP have an interest in making the arguments *Cin-Q* Plaintiffs sought to make in intervention: (1) that *TTA* Plaintiffs' class-action claims should be dismissed or stricken for lack of standing, and (2) that the *TTA* settlement is an impermissible "reverse auction" with disarmed plaintiffs whose class claims were subject to dismissal at BLP's whim during the settlement negotiations. (A723, *TTA* Doc. 28, *Cin-Q* Pls.' Mot. Intervene at 16). The only parties seeking to make those arguments are the *Cin-Q* Plaintiffs.

*TTA* Plaintiffs argued below that *Cin-Q* Plaintiffs lack standing to seek dismissal of their class allegations, but the proper place to raise that argument is in a response to the motion to strike or dismiss, after *Cin-Q* Plaintiffs have been permitted to file it. *TTA* Plaintiffs are also incorrect on the merits because once a court grants intervention, the "intervenor is treated as if [it] were an original party and has equal standing with the original parties." *In re Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233, 1246 (11th Cir. 2006). An intervenor "may move to dismiss the proceeding and may challenge the subject-matter jurisdiction of the court." Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1920 (3d ed.); *see also United States v. City of Hialeah*, 899 F. Supp. 603, 608 (S.D. Fla. 1994), *aff'd* 140 F.3d 968 (11th Cir. 1998); *Widjaja v. YUMA Brands, Inc.*, 2009 WL 3462040, at *9

(E.D. Cal. Oct. 22, 2009) (allowing class plaintiff to intervene in competing class action to move to strike class allegations, although court found consolidation of actions was more appropriate remedy).

In addition, the timeliness of *TTA* Plaintiffs' class-action claims is an issue of "standing," and thus jurisdictional and not "waivable." *See LaBauve v. Olin Corp.*, 231 F.R.D. 632, 651, 661 (S.D. Ala. 2005) (rejecting argument that "statute of limitations is a merits issue," citing "the bedrock legal principle in this Circuit that class certification requires a court to consider standing, *which does not exist if a plaintiff's claims are untimely*"); *Seacoast Sanitation Ltd., Inc. v. Broward Cty., Fla.*, 275 F. Supp. 2d 1370, 1377 (S.D. Fla. 2003) (plaintiff lacked "Article III standing" to act on behalf of a class because statute of limitations had expired).

Second, neither *TTA* Plaintiffs nor BLP are "capable and willing" to advance *Cin-Q* Plaintiffs' arguments. They have both actively argued against *Cin-Q* Plaintiffs' positions in opposing intervention.

Third, *Cin-Q* Plaintiffs offer necessary elements to the proceeding that other parties would neglect. The district court held that *Cin-Q* Plaintiffs may file objections to final approval of the *TTA* settlement like any "absent" class member, but there are things an intervenor (as a party) can do that an objecting member of a settlement class cannot do, chiefly, moving to dismiss or strike *TTA* Plaintiffs' class claims as untimely under *Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir.

1994), and *Ewing Indus. Corp. v. Bob Wines Nursery, Inc.*, 795 F.3d 1324, 1325 (11th Cir. 2015).

Also, counsel for *Cin-Q* Plaintiffs were denied the opportunity to examine Bock and Oppenheim under oath at the hearing on October 20, 2016, and (with all due respect to Magistrate Judge Porcelli), they would have done a more thorough job. For one example, when Bock testified that his strategy in the settlement negotiations with BLP when an impasse was reached was to say, "That's it. Forget it. *Good luck with the other guys*. We're out," he was admitting that the *TTA* Plaintiffs' only leverage was to threaten BLP with the prospect of having to negotiate with *Cin-Q* Plaintiffs, who possess timely class claims and do not need to bargain with BLP for a "waiver" of the statute of limitations. (A942, *TTA* Doc. 63, Hr'g Tr., Oct. 20, 2016, at 41:18–22) (emphasis added)). Counsel for *Cin-Q* Plaintiffs would have followed up on that line of questioning. The district court's response was "All right. Mr. Bock, that's all the questions I have. Thank you." (A943, Hr'g Tr. at 42).

The district court also did not ask a single question about the fact that BLP could have successfully moved to dismiss *TTA* Plaintiffs' class claims as time barred at any time prior to executing the *TTA* settlement agreement containing the "waiver" provision, had BLP decided that it did not care for the way negotiations were proceeding. (*Id.*)

30

In addition, on October 13, 2016, *Cin-Q* Plaintiffs filed a motion for leave to file the Declaration of Ross M. Good, one of *Cin-Q*'s counsel, in anticipation of the hearing on October 20, 2016. (A870, *TTA* Doc. 44). The Declaration sought to advise the district court on several matters concerning Oppenheim's anticipated testimony, including (1) that Oppenheim became an "Employee" of BHLO on April 1, 2016, a full week before he resigned from Anderson + Wanca on April 8, 2016; (2) that Good had discovered emails on Oppenheim's Anderson + Wanca work account indicating that Bock had paid Oppenheim $50,000 on or before April 6, 2016; and (3) that Anderson + Wanca's billing records showed that Oppenheim's representation of the *Cin-Q* Plaintiffs was not limited to his representation in the mediations with BLP, and included time billed on *Cin-Q* Plaintiffs' response to BLP's motion for summary judgment. (A874, *TTA* Doc. 44-1, Declaration of Ross M. Good ¶¶ 6, 8–9,13).

On October 18, 2016, *TTA* Plaintiffs filed a Motion to Strike Non-Party Filing, arguing that the Good Declaration should be stricken on the basis that "neither Cin-Q Automobiles, Inc., nor its counsel (including A+W and its associate attorney Good), have party status or standing to file pleadings in this case." (A894, *TTA* Doc. 45, *TTA* Pls.' Mot. Strike Non-Party Filing ¶ 5). The district court ruled in a minute order that it would take the Good Declaration under consideration (A900, *TTA* Doc. 48, Order), but it did not or question Bock or Oppenheim about

31

these issues in the October 20, 2016 hearing. *Cin-Q* Plaintiffs wish to protect

themselves and the class from this reverse-auction settlement, and they have a right

to intervene to do so.

In sum, the Court should reverse the district court's denial of intervention as

of right under Fed. R. Civ. P. 24(a), and remand for further proceedings.

## II.     The district court abused its discretion in denying *Cin-Q* Plaintiffs' motion for permissive intervention.

"A party seeking to intervene by permission under Rule 24(b) must show

that (1) his application to intervene is timely; and (2) his claim or defense and the

main action have a question of law or fact in common." *Chiles*, 865 F.2d at 1213.

The rule "is to be construed liberally, and doubts resolved in favor of the proposed

intervenor." *Thomas v. Henderson*, 297 F. Supp. 2d 1311, 1326 (S.D. Ala. 2003).

In this case, the district court did not dispute that *Cin-Q* Plaintiffs timely

sought intervention. (A1006, *TTA* Doc. 56, Order at 42). And the district court

agreed that "*Cin-Q* Plaintiffs maintain a claim or defense that share with this action

a common question of law or fact . . . ." (*Id.*) Even though both elements were met,

however, it ruled that *Cin-Q* Plaintiffs should not be permitted to intervene because

they "may still assert such claims and defenses in this action following preliminary

approval by asserting their objections" at final approval or "may also opt out of the

class and continue to pursue their claims on an individual basis in the *Cin-Q*

*Action*." (*Id.*) "Again," the court reasoned, "*Cin-Q* Plaintiffs will receive an

opportunity to object and to assert their entitlement to an incentive award, which Plaintiffs will not oppose, and attorneys' fees," and so there was no harm in denying intervention. (*Id.*)

These rulings constitute an abuse of discretion because they are based on the erroneous legal proposition that *Cin-Q* Plaintiffs' only interest in this litigation is an incentive award and that they are otherwise like any "absent" class member who receives notice and wishes to lodge an objection. *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1275, n.9 (11th Cir. 2000) (abuse of discretion to apply "incorrect legal standard"). As detailed above, *Cin-Q* Plaintiffs are not ordinary absent class members, and they did not devote their time and energy to their class action against BLP for the past nearly four years solely to obtain an incentive award. They also have a concrete protectable interest in acting as class representatives and recovering their costs of litigation. *See Geraghty*, 445 U.S. at 402–04; *Roper*, 445 U.S. at 336; *Zeidman*, 651 F.2d at 1043–44 (applying *Geraghty* and *Roper*). Because the district court's ruling is based on an error of law, it abused its discretion, and this Court should reverse and order the district court to allow *Cin-Q* Plaintiffs to intervene under Fed. R. Civ. P. 24(b).

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's denial of *Cin-Q* Plaintiffs' motion to intervene as of right and for permissive intervention and remand for further proceedings.

Dated:  May 30, 2017

CIN-Q AUTOMOBILES, INC. and
MEDICAL & CHIROPRACTIC
CLINIC, INC.

By:  /s/ Glenn L. Hara

Glenn L. Hara
ANDERSON & WANCA
1500 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Telephone:  (847) 368-1500
ghara@andersonwanca.com

Michael C. Addison
FL Bar No. 0145579
ADDISON & ASSOCIATES, P.A.
400 N. Tampa St., Suite 1100
Tampa, FL  33602-4714
Telephone:  (813) 223-2000
Email: m@mcalaw.net

*Attorneys for Intervenors-Appellants*

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,392 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionately spaced typeface using Microsoft Word (version 10)  in Times New Roman type style, font size 14 pt.

Dated:  May 30, 2017

 /s/ Glenn L. Hara

Attorney for Intervenors-Appellants
Cin-Q Automobiles, Inc. and Medical &
Chiropractic Clinic, Inc.

## Certificate of Service

I hereby certify that on May 30, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record registered with that system.

               /s/ Glenn L. Hara